UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 MAY -4 P 3: 43

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | | |
|---|---|---|
| BENJAMIN NASH , | : | |
| *Pro Se, Plaintiff,* | | |
| V. | : | Civil Action No. 3: 03cv1051 (CFD) (WIG) |
| ROBERT BERGER, et al., | : | |
| *Defendants,* | | April 30, 2004 |

## DECLARATION OF BENJAMIN NASH

BENJAMIN NASH declares under penalty of perjury:

1. I am the pro se plaintiff in the above-captioned matter. I make this declaration willingly and executed as my free and voluntary act. I am presently confined in a maximum security setting at Whiting Forensic Institute in Middletown, Connecticut. I have been here for 18 years.

2. I am a disabled army veteran with a qualified disability and I was also acquitted by reason of mental disease and defect. The defendants moved to dismiss my complaint on 11/18/03, and I failed to respond to that motion.

3. Attached to this declaration as Exhibit A, is a copy of my Petition for Declaratory Judgment that is made pursuant to Conn. Gen. Stat. Sec., 4-176, specifically, the procedure set forth in PSRB Reg. Sec., 17a-581-58(b)(3)(A).

4. I believe that the attached Exhibit A, is my proper legal action to address my confinement and I would also like to provide the defendants the opportunity to correct the error that was made. Unit two is a place that I will not forget. Patients on unit two have been exposed to an environment created by employees that consists of general practices of verbal abuse and

1

psychological abuse. Including the use of vulgar language, boisterous, disrespectful yelling, practices of open threats to restrict treatment, verbal threats to use seclusion and restraint, disrespectful, demeaning and insulting interactions.

5.  I respectfully request this Honorable Court for forgiving me for use the courts' precious time but I hope that the court will understand my situation. I am also respectfully requesting that my complaint be dismissed without prejudice.

Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

April 30, 2004

Benjamin Nash
Whiting Forensic Institute
70 O'Brien Drive
Middletown, CT 06457
Tel: (860) 346 9408

### CERTIFICATION

I hereby certify that a copy of the forgoing <u>Declaration</u>, was mailed in accordance with Rule 5 (b) of the Federal Rules of Civil Procedure on this 30, day of April 2004 to:

Richard J. Lynch
Assistant Attorney General
55 Elm Street, P. O. Box 120
Hartford, CT 06141 – 0120

Benjamin Nash

*A*

PSRB No. 0109                         :      PSYCHIATRIC SECURITY REVIEW
MPI # 7871                                BOARD
BENJAMIN NASH                    :               April 30, 2004

## PETITION FOR DECLARATORY JUDGEMENT

NOW COMES Benjamin Nash, ("Nash"/"acquittee") and hereby respectfully petitions the Psychiatric Security Review Board ("Board"/"P.S.R.B."), for a declaratory judgement and for a review of the order dated 5/23/03 mandating maximum-security confinement to Whiting Forensic Institute.

Petitioner Nash was committed to the jurisdiction of the P.S.R.B., on May 5, 1986 by the New London Superior Court for a period of time not to exceed natural life after he was acquitted by reason of mental disease or defect. On December 20th, 2002, and April 25th, 2003, pursuant to Conn. Gen. Stat. Sec., 17a – 585, the Board held the most recent two year mandatory review hearing. The Board issued a MEMORANDUM OF DECISION dated May 23, 2003, and found that the acquittee is mentally ill and requires inpatient treatment.

Further, the Board found, not only without evidentiary support but also in direct contradiction to the evidence *"that Benjamin Nash is so violent that he requires confinement within a maximum security setting."* Exhibit A.

1. The PSRB, is an administrative agency of the State of Connecticut; and the Board was established by end exists under the provisions of Conn. Gen. Stat. Sec., 17a – 580 through Conn. Gen. Stat. Sec., 17a – 602.

2. Nash submits this petition for a declaratory judgement with respect to the following subject matter: (1) the applicability of Conn. Gen. Stat. Sec., 17a – 599 to the specific

1

circumstances of petitioner Nash as they relate to his current placement in maximum-security; and (2) the validity of PSRB Reg. 17a – 581 – 44 (Confinement in maximum security), in view of the specific violence requirement of Conn. Gen. Stat. Sec., 17a – 599.

3. The Board interprets the language of Conn. Gen. Stat. Sec., 17a – 599 and PSRB Reg. 17a – 581 – 44 in determining whether someone is so violent that they need to be confined in maximum - security.

4. The board has heretofore not promulgated a definition of "so violent" and "danger to self or others" in the context of its authority to order an acquittee confined under conditions of maximum security. Therefore, there is no standard to determine when someone is "so violent" that they need to be confined in maximum security.

6. This motion is made pursuant to Conn. Gen. Stat. Sec., 4 – 176, specifically, the procedure set forth in PSRB Reg. Sec., 17a – 581 – 58(b)(3) and (b) (2).

## COUNT ONE
## PETITION ON APPLICABILITY OF STATUTE, REGULATION OR FINAL DECISION TO SPECIFIC CIRCUMSTANCES

7.    CONN. GEN.  STAT. SEC., 17a – 599 IS THE SPECIFIC STATUTE UPON WHICH THE RULING IS SOUGHT. PSRB REG. SEC., 17a – 581 – 58(b)(3)(A).

According to the PSRB regulation, petitioner must specifically name the statute that petitioner seeks to get a declaratory judgement under. In the present case, the statute is Conn. Gen. Stat. Sec., 17a – 599, Confinement under conditions of maximum security. The relevant wording from this statute is **"At any time the court or the board determines that the acquittee is a person who should be confined, it shall make a further determination of whether the acquittee is so violent as to require confinement under conditions of maximum security."** Gen. Stat. Sec., 17a – 599.

2

6. This motion is made pursuant to Conn. Gen. Stat. Sec., 4 – 176, specifically, the

procedure set forth in PSRB Reg. Sec., 17a – 581 – 58(b)(3) and (b) (2).

## COUNT ONE

## PETITION ON APPLICABILITY OF STATUTE, REGULATION OR FINAL DECISION TO SPECIFIC CIRCUMSTANCES

7.    CONN. GEN.  STAT. SEC., 17a – 599 IS THE SPECIFIC STATUTE UPON WHICH THE RULING IS SOUGHT. PSRB REG. SEC., 17a – 581 – 58(b)(3)(A).

According to the PSRB regulation, petitioner must specifically name the statute

that petitioner seeks to get a declaratory judgement under. In the present case, the statute

is Conn. Gen. Stat. Sec., 17a – 599, Confinement under conditions of maximum security.

The relevant wording from this statute is *"At any time the court or the board determines*

*that the acquittee is a person who should be confined, it shall make a further*

*determination of whether the acquittee is so violent as to require confinement under*

*conditions of maximum security."* Conn. Gen. Stat. Sec., 17a – 599.

8.    A BRIEF EXPLANATION OF WHY THE PETITIONER BELIEVES THAT THE PARTICULAR STATUTE IS WITHIN THE JURISDICTION OF THE BOARD. PSRB REG. 17a – 581 – 58(b)(3)(B).

Conn. Gen. Stat. Sec., 17a – 599 is a statute within the jurisdiction of the Board for

two reasons. First, Sec., 17a – 599 is listed under Part V of Chapter 319i entitled person

with Psychiatric disabilities. Part V of this chapter is entitled Psychiatric Security Review

Board. Part V lists all of the statutes pertaining to the Board. Second, Conn. Gen. Stat.

Sec., 17a – 599 sets forth the procedural directions and substantive standard to be applied

for determining when an acquittee should be confined in maximum security.

3

the Dutcher Service of the Connecticut Valley Hospital. However, Dr. Scott states that *"He remains mentally ill and a danger to others and we continue to recommend treatment at Whiting."* Transcript 12/20/02, at p. 5 lines 16 – 18.

Petitioner Nash addressed the Board and stated, *"Oh, thank you, doctor. I have just one question, okay. If I am suppose to be so violent as to inquire maximum security, why is it I've never had a code called on me? Why is it that I've whenever I had any problems or any situations, I've always asked for help, or more medication as needed? Why is it that when people come to me and decide to pick a fight or whatever, I say no, I don't want to be involved, I'm going to staff?*

*As for bad judgment, do you really think I could have stayed out of fights for 17 years with bad judgment? I mean think about this. It takes work to walk away from a situation. I'm sure all know this. It takes work to sit there and think about what should I do now. Should I fall into this person's whatever or should I walk away and just you know.*

*I mean all make mistakes. That's part of what makes us human. But I do learn from my mistakes. I'm not the same person I was 16 years ago. I've learned quite a bit since I've been here. I agree that I'm limited on social skills and things like this. And for that, I apologize. But I am making every effort to help myself and to comply with treatment. It's not like I'm just sitting there and doing nothing, you know.*

*There have been worst people, believe it or not, that have gotten out of here who are violent, who have had fights, who have been in restraints, but yet they get to go. But me, nah, I get to go nowhere. Why is that? I don't think I'm so violent as to need maximum security. If I were, I would probably be in restraints more often than not.*

4

*Now, I'm not presuming that I know the mind of the Board or anybody else, but I'm just stating my opinion. I'm no psychiatrist, I'm no psychologist, but even I can tell when my behavior is good and when it's bad.*

*I mean, you know, living in Whiting is not as you would say a piece of cake, as most people think it is. There are daily problems in Whiting. There are daily codes in Whiting. People are pushed to the bring of their endurance by other patients and some staff just to see if you'll go off. And then they say, oh, well, he's violent. But they don't tell you that. Sometimes when I go to the lunch line or something, they make snide remarks, both patients and staff, and I'm expected to just sit there and take this.*

*Now let me ask you something. If you people were in a mental institution and you were not subject to daily abuse, but nonetheless abuse, how would you take it? Now it's one thing if you can make a normal person angry at you, how much more a mental patient, you know.*

*I do have problem solving skills, otherwise my report would - - I'm sure would be a lot worse than it is. I realize that I don't have - - I'm not Miss Manners, I'll put it that way, okay. I realize I'm not Miss Manners, but I do have a certain code by which to conduct myself. And I have enough sense to know, look this situation is deteriorating and I need to get out of here. And that is what I have done.*

*All I ask the Board is that please think about it before you say, well - - (nose) oops, sorry - - please think about it before you say, oops let's rubberstamp this and not let him go anywhere. If you can make it in Whiting without any violet outbursts, I'm sure you can make it in Dutcher.*

*As to my remark about strangling Dr. Scott, I walked from the room, you know from the outside door, and I said, oh, he makes me so mad, I'll like to do this or do that. I didn't say I was going to strangle him. You know, they take everything you say, no matter what it is, even if it's a joke, and they use it against you, and they write this down. But yet they can joke with you all day and harass you all day and none of that gets written down.*

*I mean what's wrong with this picture? I can't be a human being? I can't have a sense of humor? Do I have to walk around all day being glum and, oh, well, whoa me? No, I don't think so. I enjoy life as much as the next person. Now maybe my sense of humor is a little bit warped, I'll give you that, but that doesn't mean that, you know, I'm going to be violent or do this or do that, because otherwise by this time, I would have done it, don't you agree.*

*I mean this place dehumanizes you, seriously. They call it a hospital, but I'll tell you what it really is. It's a prison for crazy people. It's just a prison, like - - just like Garner, just like Somers, just like anyplace else.*

*It's a prison. Why? Because society doesn't want you. The people here really don't want you. And you know - - you know, I'm not saying this happens all the time, but it happens enough to us to be concerned. If you could put somebody in there as a patient or as a staff or anything and just listen to some of the stuff that goes on in there, it would shock you.* Transcript 12/20/02, p. 6 at line 14 continuously to p. 10 at line 13.

As stated by the petitioner his environment on unit two was an environment that deviates from a clinical environment. Petitioner Nash respectfully requests that the PSRB take notice off the INVESTIGATIVE REPORT published by the STATE OF CONNECTICUT

6

OFFICE OF PROTECTION AND ADVOCACY FOR INDIVIDUALS WITH MENTAL ILLNESS.

(PAIMI). The INVESTIGATIVE REPORT is enclosed as Exhibit D.

(Exhibit D. This publication is available in alternative format upon request and this publication was made possible by funding support from the CENTER FOR MENTAL HEALTH SERVICES, SUBSTANCE ABUSE & MENTAL HEALTH SERVICES ADMINISTRATION and is solely the responsibility of the grantee. It does not represent the official views of the center for Mental Health Services, Substance Abuse & Mental Health Services.)

Furthermore, the petitioner respectfully requests that the PSRB take notice of the findings of the STATE OF CONNECTICUT, DEPARTMENT OF PUBLIC HEALTH, DIVISION OF HEALTH SYSTEMS REGULATION, dated March 21, 2003. "STATEMENT OF DEFICIENCIES (CMS-2567)." Enclosed, as Exhibit E.   Should be noted that both of the exhibit chronicles in support of the petitioner that staff at unit two at Whiting engage in practices of abuse. Exhibit D specifically states that Dr. Scott ignored the man's signs of distress and accused the patient of *"playing possum"*.

On April 25, 2003, an independent psychiatrist Dr. Peter Zeman, retained by Board testified, *"I asked Mr. Nash to describe his current adjustment level at Whiting for me. He did say he'd never been involved in any physical violence initiated toward others. He told me about one instance, in which he was assaulted by another patient, but he did not retaliate, he kept himself under control and waited for the staff to come to his rescue. This was all confirmed by the team in my discussions with them."* Transcript 4/25/03, at p. 4 lines 22 –24, and p., 5 lines 1 – 5.

There is no indication on the record that Dr. Zeman had found that petitioner Nash is violent and/or that petitioner Nash had injured any individual since the date of 5/5/86, his commitment to maximum security. To the contrary both Dr. Scott and Dr. Zeman testified that petitioner Nash is mentally ill but he is non-violent.

It shall be noted that petitioner Nash requested a transfer off of unit two. Petitioners' new treatment team submitted a report dated 12/16/03, pursuant to Conn. Gen. Stat. Sec., 17a – 586, that is enclosed as Exhibit F.

Exhibit F reflects in pertinent part that *"Mr. Nash was transferred to Unit 4 from Unit 2 on September 3, 2003. This move was due to Mr. Nash's expressed belief that his interests could be better served by a new treatment team. The June 25, 2003 report indicated that Mr. Nash's participation in groups was minimal. Prior to this transfer to Unit 4, progress notes indicated an improved level of participation.* ***A progress note dated July 29, 2003 stated that Mr. Nash had "engaged in rehab activities in a positive way" and had "successfully adapted to the environment surrounding these activities."***

It is also noted in Exhibit F, *"On October 17, 2003, Mr. Nash appropriately utilized staff to intervene in a problematic situation with another patient. He reportedly left the bathroom and reported to staff that another patient had been yelling at him and threatening him. He further reported that he had done nothing to provoke the threats and would not be violent unless he was attacked. Staff commended him for not taking matters into his own hands...."*

The report dated 12/16/03, states that **"It should be noted that based on a review of patient's prior records and current clinical symptoms, it was determined by the treatment team that Mr. Nash does not meet the criteria for Personality Change due to Generalized Encephalopaty."**

8

10.   AN ARGUMENT BY THE PETITIONER AS TO WHY THE PARTICULAR STATUTE CONN. Gen. Stat. Sec., 17 a – 599 IS NOT APPLICABLE TO THE SPECIFIED CIRCUMSTANCES. PSRB Reg. Sec., 17 a – 581 – 58(b)(3)(D).

Conn. Gen. Stat. Sec., 17a – 599 requires the acquittee to be *"so violent"* as to warrant confinement in maximum security. The word " *violence [violent]"* is defined as *"moving, acting, or characterized by physical force, especially by extreme and sudden or unjust or improper force"*. BARRON'S LEGAL GUIDES, LAW DICTIONARY. Accordingly, for someone to be considered *"violent"* they must have engaged in an act using physical force. The degree of force implied by the word *"violence"* depends upon the context in which it is used. For instance, its use in an insurance policy may imply a lesser degree or a different type of force than its use in a criminal statute. BALLANTINE'S LAW DICTIONARY (THIRD EDITION) cross-references *"violent"* to the word *"violence"*. The word *"violence"* is defined as *"physical force applied so as to injure or damage"*. BALLANTINE'S LAW DICTIONARY. Further, under Conn. Gen. Stat. Sec., 17a – 599, the word *"violent"* is modified by *"so,"* which means *"to a greater extent or degree: very, or extremely..: to a definite but unspecified extent or degree."* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10TH ED. 1999). Pursuant to the statutory language setting forth the standard for maximum-security confinement, the board must conclude that the acquittee is very or extremely violent, and thus violent to the extent requiring the extraordinary measure of confinement under conditions of maximum-security conditions. Petitioner Nash's conduct does not fit the statutory definition of "[*so*] *violent"* as Nash had no instances of violence in his history since being committed May 5, 1986.

The Honorable Supreme Court of the State of Connecticut recognized *"that the loss of liberty is all more profound when the institution to which the patient has been*

9

*committed is a maximum security facility such as Whiting.*" Connelly v. Comm'r of Correction, 258 Conn. 394, 405-406, 780 A.2d 903 (2001). All the testimony by Dr. Scott and Dr. Zeman mirrors that Nash is non-violent, and is certainly not *"so violent"* as to require confinement in maximum security.

11. The Board has misinterpreted the *"so violent"* language of Conn. Gen. Stat. Sec., 17a – 599. The Board should use the definition of *"so violent"* as defined above in sections 10, *"to act with physical force so as to injure or damage, to a greater extent or degree"*.

The petitioner is respectfully asking the Board to apply the above cited definition in determining whether petitioner Nash meets the statutory standard for confinement in a maximum security setting, using the facts set forth above and in the attached record.

COUNT TWO
PETITION ON VALIDITY OF REGULATION

12.    THE SECTION NUMBER AND TEXT OF THE REGULATION. PSRB Reg. Sec., 17a – 581 – 58(b)(2)(A).

The regulation being challenged as invalid is PSRB Reg. Sec., 17a – 581 – 44 entitled "Confinement in maximum security". The regulation reads that *"[t]he Board may order a person confined in maximum security setting if the Board finds that the acquittee poses a danger to self or others such that a maximum security setting is required."* PSRB Reg. Sec., 17a – 581 – 44. PSRB Reg. 17a – 581 – 2 (Definitions) (a)(6) more particularly defines *"Danger to self or to others"* as follows: *"Danger to self or to others" means the risk of imminent physical injury to others or self, and also includes the risk of loss or destruction of the property of others."*

10

13.   THE SPECIFIC BASIS FOR THE CLAIM OF INVALIDITY OF THE REGULATION. PSRB Reg. Sec., 17a – 581 – 58(b)(2)(B).

The regulation is invalid because conflicts with Conn. Gen. Stat. Sec., 17a – 599. Conn. Gen. Stat. Sec., 17a – 599 requires an acquittee to be *"so violent"* to be placed in maximum security, while PSRB Reg. Sec., 17a – 581 – 44 only requires that the *"person pose a danger to self or others"*.

14.   AN ARGUMENT BY THE PETITIONER IN SUPPORT OF THE CLAIM OF INVALIDITY, WITH A SUGGESTED REMEDY. PSRB Reg. Sec., 17a – 581 – 58(b)(2)(C).

A regulation that conflicts with a statute is invalid. Austin v. Housing Authority, 143 Conn. 338, 348-349 (1956); Rose v. Freedom of Information Commission, 221 Conn. 217, 229 (1992); Med-Trans of Connecticut v. Department of Public Health and Addiction Services, 242 Conn. 152, 168 (1997); Commissioner of Administrative Services v. Gerace, 40 Conn. App. 829, 834 (1996); Yanni v. DelPonte, Commissioner of Motor Vehicles, 31 Conn. App. 350, 357 (*J. Lavery concurring*) (1993). Therefore the well settled case law indicates, that if the language of the PSRB Regulation Sec., 17a – 581 – 44 conflicts with the language of Conn. Gen. Stat. Sec., 17a – 599, then the regulation is invalid and the statute must be followed.

The language of Conn. Gen. Stat. Sec., 17a – 599 requires that an acquittee be "so violent" to be placed in maximum-security setting. "So violent" should be defined as it was in Count 1, section 10, "to act with physical force so as to injure or damage, to a great extent or degree." This requires that the acquittee must be more than a danger to self or others, as PSRB regulation 17a – 581 – 44 reads. The PSRB regulation is over inclusive, and therefore, conflicts with the statute. The LEGISLATURE requires that an acquittee be "so violent" to be housed in maximum security. The Board requires much

less than that. The LEGISLATURE intended that the statutory standard for maximum-security confinement is whether acquittee is "*so violent*" as to require commitment under maximum-security conditions. By enacting and enforcing this regulation, the Board is attempting to supersede the language and the intent of the LEGISLATURE. In Rose, supra, the FOIC promulgated a regulation defining the word "party." However, the LEGISLATURE had already given a meaning to the word "party." The FOIC regulation defined "party" much more narrowly than the statute. Therefore, the court ruled that the FOIC definition, in the regulation, could not be used to determine who was a party, the FOIC was to use the statutory definition. Rose, at 221 Conn. at 230-231. By analogy, the Board is, in effect if not in practice, using a different standard to determine who shall be placed in maximum-security. In Rose, the FOIC used a different standard to determine who shall be a party to a proceeding. Just as in Rose, the Board should implement the definition of "*so violent*" as defined by the petitioner.

The remedy that is being sought is that the Board reads PSRB Regulation Sec., 17a – 581 – 44 in accordance with Conn. Gen. Stat. Sec., 17a – 599 and the "*so violent*" language. The petitioner further seeks the remedy of having the Board order him transferred out of maximum-security in accordance with the authority pursuant to Conn. Gen. Stat. Sec., 17a – 599.

RESPECTFULLY SUBMITTED,

DATED; APRIL 30, 2004

PETITIONER/ACQUITTEE

Benjamin Nash III
Whiting Forensic Institute
P. O. Box 70 O' Brien Drive
Middletown, CT 06457

12

## CERTIFICATION

This is to certify that a copy of the forgoing Petition for Declaratory Judgement was

served on counsels of record in accordance with the provisions of the Practice Book.

Lawrence J. Tytlan
Assistant State's Attorney
OFFICE OF THE CHIEF STATE'S ATTORNEY
300 Corporate Place
Rocky Hill, CT 06067

Glen M. Conway, Esq.
KNIGHT, CONWAY, & CERRITELLI, L.L.C.
ATTORNEYS AT LAW
7 Elm Street, 2nd Floor Left
New Haven, CT 06510

_Benjamin Nash III_
Benjamin Nash III
Whiting Forensic Institute
P. O. Box 70 O'Brien Drive
Middletown, CT 06457

13